IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ZIANTE LAMONT WATTS,

Plaintiff,

v.                                                          OPINION and ORDER

TOMMY R. ONJUKKA, EMMA KNUEPPEL, and                        24-cv-764-jdp
MARISSA SHIER,

Defendants.

---

Plaintiff Ziante Lamont Watts, proceeding without counsel, alleges that dental staff at Green Bay Correctional Institution denied him needed dental care for more than three months, in violation of the Eighth Amendment. Defendants move for summary judgment, contending that Watts cannot prove the elements of his claim.

The evidence shows that Watts' dental care was delayed because the Green Bay prison did not have sufficient staff to promptly address its population's dental care needs. But Watts sued only a dentist, a hygienist, and a dental assistant. Regardless of whether some prison officials could be held liable for the inadequate staffing, it is undisputed that defendants had no control over that problem. Defendant Tommy Onjukka, the prison dentist, exercised medical judgment in determining how to prioritize patients. Watts has not cited evidence that anyone with a less serious condition was treated before he was or that there was anything any of the defendants could have done to shorten Watts's delay other than allow him to jump the line. The Eighth Amendment did not require defendants to do that, so they are entitled to summary judgment.

UNDISPUTED FACTS

The following facts are undisputed.

In August 2023, while Watts was housed in Dodge Correctional Institution, he submitted a dental service request, stating he had "a tooth that's crowning," and it "hurts so bad." Dkt. 40-1, at 2.[1] A nurse examined Watts and reported that Watts's two lower wisdom teeth were visible and appeared impacted. The nurse gave Watts Tylenol for his pain. A few days later, a doctor at Dodge placed Watts on the "essential" waitlist for extraction, and on the "routine" waitlist for fillings.

The essential waitlist is for conditions that could cause "an acute episode or sudden flare up of an existing condition" if treatment is delayed. Dkt. 35, ¶ 20. The parties do not identify the expected wait for a prisoner on the essential waitlist. The wait for routine care can be a year or longer. There is also an "urgent" waitlist for emergency dental care when delay in treatment could result in morbidity or mortality. Examples of conditions on the urgent waitlist are acute infection, bleeding, and traumatic fracture or other tooth injury.

Watts was transferred to Green Bay in August 2023, before he received a dental appointment. Green Bay did not have a dedicated, on-site dentist at this time because of staffing shortages. Instead, dental care was provided by defendant Tommy Onjukka, a dentist who saw patients at both Green Bay and Kettle Moraine Correctional Institution. Onjukka also supervised dental service staff at ten Wisconsin prisons.

On August 24, a nurse saw Watts for complaints that his wisdom teeth were erupting, and it was painful to eat. The nurse observed that Watts's wisdom teeth were coming through

---

[1] Citations to documents filed on the docket reflect the page numbers as they appear on the headers in the court's electronic case file, not the page numbers on the documents themselves.

his gums, but there were no signs of an infection. She gave him acetaminophen, ibuprofen, and a topical numbing gel for his pain.

Onjukka became aware of Watts's tooth complaints on August 25. Onjukka did not schedule an appointment because Watts was already on the waitlist, the nurse had prescribed pain medication, and the nurse had not observed swelling. Onjukka sent Watts a note that he would be seen "as soon as practical." Dkt. 40-1, at 3. No estimated timeline was provided.

In October 2023, defendant Marissa Shier, a dental hygienist, received a call from an officer forwarding Watts's request for more topical gel. Shier told the officers that she did not have the authority to prescribe medication, but she would forward the request to the dentist, and she advised that Watts should submit a new dental service request. Shier did not have authority to change the order of the waitlist to give one prisoner priority over another.

Around the same time, Watts submitted a dental service request in which he wrote that he was in "so much pain." Dkt. 40-1, at 4. In response, Onjukka wrote that Watts would be seen "soon as practical" and to let a nurse know if he experiences swelling. *Id.* Onjukka could have moved Watts to the "urgent" waitlist, but he chose not to because other similarly situated patients who were also complaining of pain had been on the waitlist even longer than Watts.

In November 2023, Watts submitted multiple dental service requests in which he complained that he was still in pain. He also filed requests in which he stated that "it's hard to chew my food" and "I am having a hard time eating." Dkt. 40-1, at 6–7. Nurses who evaluated Watts saw no signs of infection, but one nurse did observe gum swelling. Onjukka received one of these requests and responded the same way he had before: he told Watts that he would be seen as soon as practical. Onjukka did not recommend switching Watts to a liquid diet because "the food served at Corrections is typically soft in consistency." Dkt. 35, ¶ 109.

In late November, Watts was transferred to the Wisconsin Secure Program Facility (WSPF). The waitlist at WSPF was shorter than the waitlist at Green Bay, so Watts was at the top of WSPF's waitlist.  A doctor evaluated Watts on November 30 and ordered extraction of three teeth. Those teeth were removed during an offsite visit in April 2024.

## ANALYSIS

### A.  Overview of the claim and legal standards

Watts contends that defendants delayed treatment of his dental care in violation of the Eighth Amendment.[2] A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical

---

[2] In the screening order, I construed Watts's complaint to include a claim that defendants were responsible for not providing adequate dental staff. But Watts says in his summary judgment brief that he is not asserting such a claim, Dkt. 44, at 1, so I need not consider that issue. Watts's clarification moots two of defendants' arguments that are solely about the staffing issue: (1) defendants have sovereign immunity for any claims about adequacy of staffing; and (2) defendants were not personally involved in staffing decisions.

treatment, but they are disregarding the risk by consciously failing to take reasonable measures. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

(1) The prisoner needed medical treatment.

(2) The defendant knew that the prisoner needed treatment.

(3) Despite his or her awareness of the need, the defendant consciously failed to take reasonable measures to provide the necessary treatment.

Defendants contend that Watts cannot satisfy any of the elements of his claim. Alternatively, defendants contend that they are entitled to qualified immunity.

On a motion for summary judgment, the question is whether there are any genuine disputes of material fact. Fed. R. Civ. P. 56(a). A factual dispute is genuine if it is based on admissible evidence that actually contradicts opposing evidence. *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012). A genuine factual dispute is material if it could make a difference to the outcome of the case, or, in other words, a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). In deciding whether a defendant is entitled to qualified immunity on a motion for summary judgment, the court must decide whether the defendants violated the plaintiff's clearly established rights when the evidence is viewed in the light most favorable to the plaintiff. *Jerger v. Blaize*, 41 F.4th 910, 913 (7th Cir. 2022); *Kemp v. Liebel,* 877 F.3d 346, 350 (7th Cir. 2017).

I conclude that Watts's claim fails on the third element: he has not pointed to evidence that any of the defendants consciously failed to take reasonable measures to treat him. This makes it unnecessary to consider whether defendants are entitled to qualified immunity.

Onjukka's involvement in this case is qualitatively different from the involvement of the other two defendants, so I will consider Watts's claim against him separately.

## B.  Tommy Onjukka

For the purpose of deciding defendants' motion for summary judgment, I will assume that the pain Watts was experiencing from his wisdom teeth qualifies as a serious medical need and that Onjukka knew that Watts was in pain.[3] It is undisputed that Watts waited more than three months at the Green Bay prison without receiving a dentist appointment after he reported he was in pain and a different dentist had determined that he needed an extraction.

A delay in treating pain caused by a dental problem can violate the Eighth Amendment. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015). But the key issue is the *reason* for the delay. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 97 (7th Cir. 2014). Did the defendant simply disregard the prisoner's pain, or did the defendant exercise appropriate medical judgment? Further, if the defendant did not take the action desired by the prisoner, what feasible alternatives were available to the defendant? *See Townsend v. Cooper*, 759 F.3d 678, 690 (7th Cir. 2014). Relevant to those questions, the following facts are undisputed:

- Watts was properly designated on the "essential" waitlist. Watts was not suffering from an infection, was not bleeding, and did not have any other

---

[3] In addition to his pain, Watts says that he lost three teeth as a result of Onjukka's delay. But it is undisputed that all the extracted teeth were wisdom teeth. Watts cites no evidence that the teeth were extracted because of a delay in examining him.

symptom that would have placed him on the "urgent" waitlist. This means that prisoners with more urgent or older dental care needs were given priority, and Watts would be seen when he rose to the top of the essential waitlist.

- Dental care staff at the Green Bay prison was limited. Onjukka was assigned to Green Bay only two days a week.

- While Watts was waiting to be seen by a dentist at Green Bay, there were other prisoners on the essential waitlist who had been waiting longer than he had.

- Nurses provided Watts with multiple types of pain relievers throughout the waiting period.

- Onjukka could not request a referral for offsite dental care until after it was determined that Onjukka was not qualified to provide the care himself. Onjukka was qualified to perform some extractions.

Based on these undisputed facts, no reasonable jury could find that Onjukka violated the Eighth Amendment by failing to see Watts sooner. The delay was caused by two things: the Green Bay prison had limited dental staff, and Onjukka was caring for other prisoners who had even more urgent dental needs or had been waiting even longer than Watts. If Onjukka had moved Watts to the top of the list, it would have required Onjukka to move one of those other prisoners further down the list. Watts identifies no medical reason why Onjukka should have done that.[4]

---

[4] Some of Watts's dental service requests included references to difficulty eating. But Watts has not cited any evidence that he did not receive adequate nutrition or that he lost weight or suffered any adverse health consequences as a result of that difficulty.

7

I previously considered a similar issue in *Bey v. Haines*, No. 13-cv-618-jdp, 2016 WL 5718251, at *7 (W.D. Wis. Sept. 30, 2016), in which a prisoner contended that a dentist unduly delayed dental care. I rejected the argument on the following grounds: "[D]efendants were doing the best they could in handling [the plaintiff's] relatively less serious concerns in the context of dealing with their entire workload, long patient waiting lists and short work weeks. In short, they used their medical judgment to prioritize which patients to treat first." *Id.* The court of appeals affirmed that decision, adopting similar reasoning:

> During the two years that [the defendant] saw [the plaintiff], he was the prison's only dentist, whom the prison retained just one day per week to treat the inmates. He used his professional judgment to treat each inmate based on the severity of their needs. No evidence suggests that [the defendant] preferred inmates with minor dental issues over [the plaintiff].

*Bey v. Haines*, 802 F. App'x 194, 199 (7th Cir. 2020).

The same reasoning applies in this case. Watts has cited no evidence either that Onjukka was treating prisoners with less serious problems before him or that Onjukka was not making reasonable efforts to make progress on the waitlist. Watts also does not challenge the medication choices that dental staff made to manage Watts's pain while he waited. So Watts cannot prevail on a claim that Onjukka unreasonably disregarded his dental care needs in violation of the Eighth Amendment.

This is not to say that it is reasonable for a prisoner with a painful tooth condition to wait more than three months before even being scheduled for an appointment with a dentist. (It is unknown how much longer Watts would have waited had he not been transferred to a different prison with a shorter waitlist.) The long delays suggest an endemic problem within the Wisconsin Department of Corrections that requires more staff, more authorizations for referrals to offsite dentists, or a combination of both. But it is undisputed that Onjukka does

not have authority to address those problems, so I need not consider whether a higher-ranking official could be held liable under the Eighth Amendment for failing to take more action to prevent the delays. The bottom line is that Onjukka exercised medical judgment under difficult circumstances, so he is entitled to summary judgment.

## C. Marissa Shier and Emma Knueppel

Shier was a dental hygienist; Knueppel was a dental assistant. Watts sued them on the ground that they refused to schedule an earlier dental appointment for him. Both of these defendants were responsible for scheduling appointments. Dkt. 35, ¶¶ 10–11, 39, 41, 49. But the parties do not cite any evidence that either defendant was personally aware of Watts's situation. Regardless, neither defendant had authority to give Watts an earlier appointment. Rather, their authority was limited to scheduling appointments for whoever was at the top of the waitlist. They did not have discretion to change a prisoner's priority. *Id.* ¶¶ 43, 51, 53. A defendant cannot be held liable under the Eighth Amendment for failing to something she did not have authority to do. *Hunter v. Mueske*, 73 F.4th 561, 566–67 (7th Cir. 2023). So Knueppel and Shier are entitled to summary judgment.

## ORDER

IT IS ORDERED that defendants' summary judgment motion, Dkt. 33, is GRANTED. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered August 13, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

9